UNITED STATES DISTRICT COURT FOR THE
DISTRIC OF PUERTO RICO

| | |
|---|---|
| JUAN R. TORRUELLA, *et al*.<br><br>Plaintiffs,<br><br>v.<br><br>TRANSAMERICA LIFE INSURANCE CO., *et al*.<br><br>Defendants. | Civil Action No. 17-2111 |

## I. INTRODUCTION

Plaintiffs Juan R. Torruella del Valle ("Torruella"), his wife Judith Wirt de Torruella, and their legal conjugal partnership (collectively, "Plaintiffs") instituted this civil suit against Defendants Transamerica Life Insurance Co., successor in interest to Transamerica Occidental Life Insurance Co. ("Transamerica"), Global Insurance Agency, Inc. ("Global"), and the Estate and Heirs of Fernando A. Bruno ("Bruno") in the Commonwealth of Puerto Rico, Court of First Instance, San Juan Part, on July 18, 2017. Transamerica removed the lawsuit to this Court on August 21, 2017 pursuant to 28 U.S.C. §§ 1332, 1441, and 1446. Dkt. No. 1. Transamerica asserts that this Court has original jurisdiction over the lawsuit pursuant to 28 U.S.C. § 1332 because the dispute is between citizens of different states and the amount in controversy exceeds $75,000. *Id*. Defendant Global Insurance Agency, Inc. ("Global") joined in the removal. Dkt. No. 3.

1

Currently before the Court is Plaintiffs' motion to remand to the Commonwealth of Puerto Rico. Dkt. No. 12.[1] Plaintiffs argue that remand is appropriate because diversity jurisdiction does not exist in this case because Plaintiffs, Global, and Bruno are all citizens of Puerto Rico. Transamerica opposes the motion to remand. Dkt. No. 16. It argues that Global and Bruno are sham defendants that were joined in this lawsuit solely for the purpose of defeating diversity jurisdiction and, therefore, must be ignored for purposes of determining jurisdiction. Having reviewed the motion, the opposition thereto, the record of the case, and the relevant legal authority, the Court will grant Plaintiffs' motion to remand. The reasoning for the Court's decision follows.

## II. FACTUAL BACKGROUND AND PROCEDURAL HISTORY[2]

This dispute centers on a life insurance policy issued to Plaintiff Juan R. Torruella ("Torruella") in September 2002 by Transamerica. Global and Bruno, an employee of Global, sold the policy to Torruella. Torruella originally held three policies with Transamerica, but as the result of a class action suit against Transamerica to which Torruella was a party, Torruella exchanged the three policies for the one policy that is the subject of this lawsuit. The policy exchange is commemorated in the "Compromise, Settlement, and Release" dated September 26, 2002 between Transamerica and Torruella (the "Settlement Agreement"). Dkt. No. 17, Ex. B at 12.

---

[1] Also before the Court are (1) Transamerica's motion requesting that this Court take judicial notice of documents filed in *Torruella v. Transamerica Life Insurance Co., et al*. Case No. 3:16-cv-02695 (BJR) (District of Puerto Rico) and (2) Plaintiffs' request that this Court "deem" Plaintiffs' motion to remand unopposed as to Global. For reasons that will become clear in addressing the motion to remand, the Court will grant Transamerica's motion that this Court take judicial notice of documents filed in *Torruella v. Transamerica Life Insurance Co., et al*. Case No. 3:16-cv-02695 (BJR) (District of Puerto Rico) and will strike as moot Plaintiffs' motion regarding Global.

[2] The factual allegations set forth in this section are drawn from the amended complaint filed in *Torruella v. Transamerica Ins. Co*., No. SJ-2017-CV-00784 (907), filed in Commonwealth of Puerto Rico, Court of First Instance, San Juan Part. The amended complaint is attached as Ex. 2 to Dkt. No. 21 in the instant case.

2

Torruella claims that before he signed the Settlement Agreement, Global and Bruno represented to him that the new insurance policy would have a face value of $1,250,000, with fixed monthly premium payments of $1,740 throughout the term of the policy, until Torruella's 94th birthday. Torruella further claims that he only agreed to enter into the Settlement Agreement and accept the new policy because of the representations Global and Bruno made to him. To that end, on August 29, 2002, Torruella sent a letter to Global and Bruno "authorizing [them] to cancel [his] present policies with Transamerica [] and to apply the present cash value [of the present policies] (approximately $75,000) to the new policy [.]" Dkt. No. 21-2, Ex. A. The letter further stated:

> The new premium will be $1,740-per-month for the life of the policy until age 94, and the face will be $1,250,000. It will be a preferred premium policy and will contain a non-contestability clause.

*Id*. Torruella asserts that Global, Bruno, and Transamerica never contradicted his understanding of the terms of the new policy as set forth in the August 29, 2002 letter.

Thereafter, Transamerica sent Torruella the Settlement Agreement with the new policy attached. Pursuant to Torruella's alleged agreement with Global and Bruno, the new policy had a face value of $1,250,000 and monthly premiums of $1,740. However, contrary to Global and Bruno's alleged representations, according to Transamerica, the plain language of the new policy, as well as the terms of the Settlement Agreement, clearly state that the monthly premiums are not guaranteed, but rather, subject to change.

Nevertheless, Transamerica collected $1,740 a month from Torruella for the next fourteen years. In addition, Torruella claims that Global and Bruno reaffirmed their agreement with respect to the new policy in a document they sent to him on January 26, 2012, which states in relevant part:

> [T]he "In Force Illustration" that was provided to you in September 2003 [sic] illustrat[es] that by paying a monthly premium of $1,740.00 your policy with a face value of $1,250,000 will be in force and effect from your age of 69 until your age of 93.

Dkt. No. 21-2 ¶ 3.12 (the "[sic]" in the amended complaint).

However, Torruella claims that on or around August 23, 2016, Transamerica notified Torruella that his monthly premiums would increase "exponentially" to $3,873 to $7,029 per month, depending on the option he chose. *Id*. at ¶¶ 3.14, 3.16. Torruella asserts that he is unable to afford these monthly payments; he also claims that he is unable to obtain similar insurance coverage through another company. After attempting to reach an amicable resolution with Transamerica, he initiated a lawsuit in the Commonwealth of Puerto Rico Court of Original Jurisdiction, San Juan Judicial Center, Superior Division, against Transamerica and Global seeking declaratory and injunctive relief. Dkt. No. 17, Ex. B.

Transamerica removed the lawsuit to the United States District Court for the District of Puerto Rico on the basis of diversity jurisdiction; the case was assigned to this district judge. *Id*. Transamerica conceded in its notice of removal that diversity jurisdiction would not exist if Global was a legitimate defendant in the lawsuit (both Global and Torruella are citizens of Puerto Rico).[3] However, Transamerica argued that Torruella's claims for declaratory and injunctive relief sound solely in contract and because Global is not a party to the contract (*i.e.*, the insurance policy between Transamerica and Torruella), Torruella cannot maintain such a claim against Global. Transamerica further argued that the policy, which was attached as an exhibit to the complaint, clearly demonstrates that only Transamerica's "President or a Vice President together with our Secretary have the authority to make any change in this policy." *Torruella v. Transamerica Life Ins. Co.*, 3:16-cv-02695, Dkt. No. 1, Ex. 3 p. 49. Therefore,

---

[3] Bruno was not a named defendant in the first lawsuit.

4

Transamerica argued, because Global was not a party to the policy and was specifically prohibited from making changes to the policy, this Court could not award injunctive and/or declaratory relief against Global. Given this, Transamerica claimed that Global had been fraudulently joined in the lawsuit for the purpose of defeating diversity jurisdiction. This Court agreed with Transamerica and denied Torruella's motion to remand. *Torruella v. Transamerica Life Ins. Co.*, 3:16-cv-02695, Dkt. No. 23.

Thereafter, Torruella filed an amended complaint in which he added his wife as a co-plaintiff, and added claims for breach of contract and tort, in addition to the declaratory judgment and injunction claims. He also sought monetary damages against Transamerica and Global. *Torruella v. Transamerica Life Ins. Co.*, 3:16-cv-02695, Dkt. No. 38. Two days later, Torruella filed a second motion to remand, arguing that Global was no longer fraudulently joined under the new allegations in the amended complaint. *Torruella v. Transamerica Life Ins. Co.*, 3:16-cv-02695, Dkt. No. 39. This Court denied the motion, explaining that the determination of whether a joinder is fraudulent must be based on the complaint as it existed at the time the petition for removal was filed—in other words, the original, not amended complaint. *Torruella v. Transamerica Life Ins. Co.*, 3:16-cv-02695, Dkt. No. 53. Thereafter, Torruella voluntarily dismissed the lawsuit without prejudice on June 27, 2017. *Id.* at 54.

Less than a month later, on July 18, 2017, Torruella filed a new complaint in the Commonwealth of Puerto Rico, Court of First Instance, San Juan Judicial Center, Superior Court—the instant lawsuit. *Torruella v. Transamerica Ins. Co.*, No. SJ-2017-CV-00784 (907). Torruella again names Transamerica and Global as Defendants, but he also names the estate of Fernando A. Bruno, as well as the individual members of the estate, as Defendants.[4] He brings

---

[4] Bruno is now deceased; however, for ease of reference, the Court will refer to the estate of Bruno and its individual members as "Bruno."

the following four causes of action: (1) injunctive and declaratory relief, (2) breach of contract, (3) negligent and/or fraudulent misrepresentation for the purpose of inducing Torruella to enter into the policy agreement, and (4) attorney's fees and costs due to Defendants' alleged "reckless[ness], stubborn[ness], or contumacious[ness] in the course of [this] litigation." Dkt. No. 21-2 ¶ 8.3.

On July 21, 2017, the Puerto Rico Superior Court issued an *ex parte* temporary restraining order against Transamerica, Global, and Bruno, prohibiting Defendants from "making any change in Torruella del Valle's insurance policies [*sic*]." Dkt. No. 14-1. Thereafter, on July 26, 2017, Torruella served Transamerica and Global with a summons and the complaint, as well as the temporary restraining order.[5] On August 14, 2017, the Puerto Rico Superior Court held a hearing on Torruella's request for a preliminary injunction, during which it examined evidence offered by the parties and heard testimony from witnesses.

On August 21, 2017, Transamerica filed a notice of removal with this Court and Global filed a Notice of Joinder. Dkt. Nos. 1, 3. Simultaneously, Transamerica filed a copy of the Notice of Removal with the Puerto Rico Superior Court. The next day, on August 22, 2017, the Puerto Rico Superior Court issued a minute order acknowledging that it no longer had jurisdiction based on Transamerica's Notice of Removal. However, shortly thereafter, Torruella filed a motion with the Puerto Rico Superior Court in which he argued that the removal was ineffective because Global had not filed its Notice of Joinder with the court. Within an hour, and without waiting for a response from Transamerica, the Puerto Rico Superior Court issued a fifteen page written decision in which it determined that a preliminary injunction against Transamerica and Global is warranted. Dkt. No. 14-3.

---

[5] It is unclear from the record whether Bruno has been served.

In its decision, the Puerto Rico Superior Court made the following, relevant, findings of fact:

1. Global and Bruno are agents of Transamerica;

2. Global and Bruno represented to Torruella that the new policy would have a face value of $1,250,000 and that the monthly premiums would be $1,740 until Torruella turned 94 years old;

3. Torruella memorialized this representation in a letter to Global and Bruno dated August 29, 2002;

4. Neither Transamerica nor Global informed Torruella that what was set forth in the August 29, 2002 was incorrect or that it was contrary to the terms of the policy;

5. Bruno made alternations to the Settlement Agreement between Transamerica and Torruella;

6. Transamerica did not object to the alterations made by Bruno; and

7. Bruno confirmed the terms set forth in the August 29, 2002 letter in a letter to Torruella dated January 26, 2012.

Dkt. No. 14-3 pp. 3-6. The Puerto Rico Superior Court then applied the relevant law to these findings of fact and "rule[d], at this stage of the proceedings," as follows:

> Global's representations (through Bruno) as its general agent, bind Transamerica. At the least, Global had apparent authority… Further, neither Global nor Transamerica at any time whatsoever rebutted Torruella del Valle's letter, dated August 29, 2002; rather, … [the parties] acted consistent[ly] with what was indicated in [the letter] for approximately the following 14 years, [in addition] [] Bruno confirmed in his memorandum dated January 26, 2012, 10 years after the new policy had been running. Likewise, Global's authority to bind Transamerica appears from the changes that Bruno made, and which Transamerica ratified, in the [Settlement Agreement.] This shows that Bruno had power to alter and/or amend the contractual terms, as in fact, he amended them; and Transamerica accepted these amendments and became bound by them.
>
> Further, based on the doctrines of waiver and estoppel, Global's actions and omissions (including not clarifying to Torruella del Valle's understanding as to the applicable terms included in his letter of 2002, and the confirmation by Global of the same terms in [its] letter of 2012) and Transamerica's action of debiting the same fixed amount of $1,740 for the payment of the monthly premium for the last 14 years 'establish[ed] a custom over the payment of the premiums, [which even

7

> if] different to what was stated in the written agreement, the insurer cannot [now] rely on the written working of the agreement as to the matter against the insurer, even when the contract says that agents are not authorized to vary the terms of the agreement. The custom or practice as to the payment of premiums creat[ed] in the insured a reasonable expectation that will continue to be observed.'

*Id*. at 12. Based on the foregoing, the Puerto Rico Superior Court concluded that "[Torruella] has the substantial probability of prevailing on the merits of his claim" and thus granted him a preliminary injunction "prohibiting defendant [*sic*] from executing any act having the effect of altering the monthly premium and/or the terms and conditions of Torruella del Valle's life insurance policy during the pendency of this litigation and until its final resolution." *Id*. at 15.

As stated above, Transamerica removed the instant action to this Court, arguing that diversity jurisdiction exists because Global and Bruno were fraudulently joined in this lawsuit for the purpose of defeating this Court's jurisdiction. Torruella has moved this Court to remand the matter back to the Puerto Rico Superior Court. He argues that given the Superior Court's determination that he has the "substantial probability of prevailing on the merits of his claims" against Defendants, including Global and Bruno, Transamerica cannot demonstrate that Global and Bruno are "sham" defendants. As such their citizen must be considered by this Court in determining whether diversity jurisdiction exists.

### III. DISCUSSION

#### A. Legal Standard

A defendant may remove a civil action to federal court when the federal court would have had original jurisdiction. 28 U.S.C. § 1441(a). Generally, removal is improper if a defendant "is a citizen of the State in which such action is brought." *Id*. at § 1441(b)(2).

8

However, "under the doctrine of fraudulent joinder, removal is not defeated by the joinder of a non-diverse defendant where there is no reasonable possibility that the state's highest court would find that the complaint states a cause of action upon which relief may be granted against the non-diverse defendant." *Universal Truck & Equip. Co. v. Southworth-Milton, Inc*., 765 F.3d 103, 108 (1st Cir. 2014).

"Fraudulent joinder is the joining, by a plaintiff, of defendants, against whom the plaintiff does not seek to secure a judgment, for the sole purpose of defeating diversity." *Alpha Biomedical & Diagnostic Corp. v. Philips Med. Sys. Netherland BV*, 828 F. Supp. 2d 425, 432 (D.P.R. 2011). "[A] finding of fraudulent joinder bears an implicit finding that the plaintiff has failed to state a cause of action against the fraudulently joined defendant." *Polyplastics, Inc. v. Transcones, Inc.*, 713 F.2d 875, 877 (1st Cir. 1983). "When assessing a plaintiff's ability to establish a cause of action against the non-diverse party in state court, 'the court typically "conducts a [Rule] 12(b)(6)-type analysis, looking initially at the allegations of the complaint to determine whether, under state law, the complaint states a claim against the in-state defendant."'" *Sea World, LLC v. Seafarers, Inc*. No. CV 16-1382 (PG), 2016 WL 3258360, at *4 (D.P.R. June 10, 2016) (quoting *Geva Eng'g Grp. Corp. v. Furmanite Am., Inc*., 844 F. Supp. 2d 225, 229 (D.P.R. 2012)).

"[A] defendant seeking to prove that a co-defendant was fraudulently joined bears an extremely heavy burden," and "[a]ll contested factual issues and any doubt as to the propriety of the removal must be resolved in favor of remand." *Renaissance Mktg., Inc. v. Monitronics Int'l, Inc*., 606 F. Supp. 2d 201. 208 (D.P.R. 2009).

### B. Global and Bruno Were Not Fraudulently Joined in the Instant Lawsuit

As stated above, Transamerica removed the instant lawsuit to this Court based on diversity jurisdiction. It argues that removal is appropriate because this Court has already determined that Torruella cannot state a claim upon which relief can be granted against Global. As previously discussed, in his first lawsuit, Torruella asserted claims for declaratory and injunctive relief based on breach of contract against Transamerica and Global. In denying Torruella's motion to remand the first lawsuit, this Court determined that Torruella failed to state a claim against Global because: (1) Global is not a party to the insurance policy and, as such, Torruella could not maintain a breach of contract claim against it, and (2) the plain language of policy prohibits parties other than Transamerica from modifying the terms of the policy. Therefore, this Court concluded that because Torruella failed to state a viable claim against Global, its status as a defendant in the lawsuit did not defeat diversity jurisdiction and Torruella's motion to remand must be denied.

Transamerica argues that the same outcome must be reached in the instant lawsuit because it is "based on the same allegations and assert[s] the same contract-based claims" as those alleged in the first lawsuit. Dkt. No. 16 at 1. Transamerica's argument ignores the significant distinction between the removed complaint in the first lawsuit and the removed complaint in the instant lawsuit—rather than simply asserting a breach of contract claim as he did in the first lawsuit, here, Torruella claims that Global and Bruno negligently and/or fraudulently misrepresented the terms of the insurance policy for the purpose of inducing him into accepting the insurance policy. He claims that Global and Bruno knew he wanted a policy with a face value of $1,250,000 and with fixed monthly premiums of $1,740 until he turned 94. He further claims that Global and Bruno, as Transamerica's agents, reassured him that the policy

Transamerica was offering met his specifications. He asserts that he memorialized Global and Bruno's representations in a letter he sent to them on August 29, 2002, and further claims that neither Global/Bruno nor Transamerica disputed the terms as set forth in the letter. Indeed, he asserts that Global and Bruno reconfirmed their representations in a letter they sent to him on January 26, 2012. Finally, he alleges that Transamerica acted in accordance with the terms set forth in his August 29, 2002 letter for the next 14 years. Accepting the factual allegations in the complaint as true and construing all reasonable inferences in Torruella's favor as this Court is required to do at this stage of the litigation, Torruella has set forth a plausible claim upon which relief may be granted against Global and/or Bruno. *See Foley v. Wells Fargo Bank, N.A.*, 772 F.3d 63, 71 (1st Cir. 2014).

Nevertheless, Transamerica claims that Torruella has no possibility of recovery against Global and/or Bruno based their alleged misrepresentations because any claims based on the alleged misrepresentations are barred by Puerto Rico's one-year statute of limitation on tort claims. Transamerica alleges that the claims are time-barred for two reasons. First, Transamerica asserts that Torruella was placed on notice of his alleged misrepresentation claims when he received notice from Transamerica that it intended to increase his monthly premiums. Transamerica alleges that it sent Torruella a letter notifying him of the premium increase on June 24, 2016, yet Torruella did not file the instant lawsuit until July 18, 2017, more than one year later. Therefore, Transamerica argues, the tort claims are time-barred.

Second, Transamerica argues that the tort claims are time-barred for the additional reason that the terms of the insurance policy and the Settlement Agreement, both of which Torruella received in September 2002, clearly state that the monthly premiums are not guaranteed, but

rather are subject to change. Thus, Transamerica argues, Torruella was on notice of the alleged misrepresentations fifteen years before he filed this tort claim.[6]

Transamerica's argument misses the mark. As discussed above, the Puerto Rico Superior Court has already determined, based on the record before it at the preliminary hearing, that: (1) Global and Bruno were agents of Transamerica, (2) they reassured Torruella that the policy met his required specifications, (3) they had the apparent authority to modify the terms of the policy and/or Settlement Agreement, and (4) Transamerica did not object to modifications Bruno made to its documents. Based on this, the Puerto Rico court concluded that there is a substantial likelihood that Torruella can establish that Transamerica waived the various provisions in the policy and Settlement Agreement on which it now relies. Dkt. No. 14-3 at 12 (stating that based on the doctrines of waiver and estoppel, Torruella has a strong likelihood of proving that Transamerica's and Global's "actions and omissions" created a "custom over the payment of the premiums" that trumps the terms in the policy). Therefore, Torruella has already cleared the hurdle of establishing that he has a reasonable possibility of prevailing against Global and/or Bruno under Puerto Rico law. *Arriaga v. New England Gas Co.*, 483 F. Supp. 2d 177, 183 (D.R.I. 2007) (citing *Griggs v. State Farm Lloyds*, 181 F.3d 694, 699 (5th Cir.1999) (the test for determining whether joinder is fraudulent is "whether there is any reasonable basis for predicting" that the plaintiff may prevail under state law); *Travis v. Irby*, 326 F.3d 644, 647 (5th Cir. 2003) (there must at least be a reasonable basis for predicting that state law would allow recovery in order to preclude a finding of fraudulent joinder). Thus, Transamerica has not met its

---

[6] In making this argument, Transamerica requests that this Court take judicial notice of the complaint Torruella filed in the first lawsuit because it included a copy of the insurance policy in question as well as a copy of the Settlement Agreement (said documents are not attached to the complaint in this lawsuit). The Court finds that it is appropriate to take judicial notice of those documents and will do so. *See Kowalski v. Gagne*, 914 F.2d 299, 305 (1st Cir. 1990) ("It is well-accepted that federal courts may take judicial notice of proceeding in other courts if those proceedings have relevant to the matters at hand.").

"extremely heavy burden" of establishing that Global and Bruno are fraudulently joined in this lawsuit. *Renaissance*, 606 F. Supp. 2d at 208.[7]

In addition, Transamerica's claim that Torruella received notice of the premium increase on June 24, 2016 is inconsistent with what Torruella alleges in the complaint. *See* Dkt. No. 21, Ex. 2 ¶ 3.14 (stating that Torruella was notified of the premium increase on or around August 23, 2016). Torruella did not attach the letter to the complaint; rather, Transamerica attaches it as an exhibit to its Notice of Removal. Generally a court may not consider documents extraneous to the complaint in resolving a motion for remand, but even if this Court were to consider the letter, Transamerica has simply created a dispute of fact, and as stated earlier in this order, the Court is required to assume all disputed facts in Torruella's favor at this point in the litigation. *See Garib-Bazain v. Hospital Espanol Auxilio Mutuo, Inc.*, 773 F. Supp. 2d 248, 252 (noting that any "uncertainties must be resolved in favor of remand"). Therefore, this issue must be left for the Puerto Rico Superior Court to resolve.

---

[7] Transamerica also argues that Torruella's tort claims fail because he released any such claims when he signed the Settlement Agreement. However, the Puerto Rico court also rejected this argument, *see* Dkt. No. 14-3 at 13-14, so the argument holds no weight here where this Court simply must determine if there is a reasonable possibility that Torruella may prevail on the claim under state law. In short, there is.

## V. CONCLUSION

Based on the foregoing, the Court HEREBY GRANTS Plaintiffs' motion to remand [Dkt. No. 12]. The matter shall be remanded to the Commonwealth of Puerto Rico, Court of First Instance, San Juan Judicial Center, Superior Part. The Court further GRANTS Transamerica's motion to take judicial notice of certain documents [Dkt. No. 17], and STRIKES as moot Plaintiffs' request that this Court deem the motion to remand unopposed as to Global.

Dated this 19th day of April, 2018.

Barbara Jacobs Rothstein
U.S. District Court Judge